UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLES D. COLLINS**                                                                **PLAINTIFF**

**VS.**                                                                         **CIVIL NO.  3:12-CV-273-CWR-FKB**

**JACKSON PUBLIC SCHOOL DISTRICT**                                **DEFENDANT**

### ORDER

Before the Court is Defendant Jackson Public School District's Motion for Summary Judgment, Docket No. 68. The Defendant supports the motion with its exhibits, Docket Nos. 69-1 to 80-8; memorandum of law, Docket No. 69; and rebuttal, Docket No. 80. Pro se Plaintiff Charles Collins opposes the motion with his response, Docket No. 76; exhibits, Docket Nos. 76-1 to 81-3; memorandum of law, Docket No. 77; and surrebuttal,[1] Docket No. 81-1. Plaintiff has also filed a Motion to Admit Defendant's Statements Into Evidence. Docket No. 83.[2]  After careful consideration of the submissions of the parties and the applicable law, the Court finds that the Motion for Summary Judgment will be granted.

### I. FACTUAL AND PROCEDURAL HISTORY

Charles D. Collins, a former math teacher and baseball coach for Jackson Public School District's ("District") Callaway High School, filed suit against the District on April 23, 2012,

---

[1] Seeking to respond to Defendant's rebuttal in support of its summary judgment motion, Docket 80, Plaintiff filed a Motion for Leave to File a Surrebuttal. Docket No. 81. Plaintiff's response, however, merely restates allegations previously set forth in his memorandum opposing summary judgment. Therefore, Plaintiff's surrebuttal will not be considered for purposes of this ruling. *Ratcliff-Sykes v. Mississippi Reg'l Hous. Auth. VI*, 3:11-CV-712-CWR-LRA, 2012 WL 5997441 (S.D. Miss. Nov. 30, 2012).

[2] Plaintiff submits, *inter alia*, a number of transcripts of deposition testimony of several deponents in the case of *M.C. , by and through his next friend*, *Patricia Thurman, et al., v. Marlon Dorsey, et al.*, Civil Action No. 3:10CV653TSL-MTP (S.D. Miss. 2010). The deposition testimony alone consumes more than 130 pages. To allow submission of these "statements" would serve no purpose because Collins has not pointed the Court to any of the testimony to support his case. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

alleging three (3) counts of retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, and 34 C.F.R. §100.7e, and one (1) count of breach of the implied covenant of good faith and fair dealing. Docket No. 1, at 7-9. Defendant filed its Answer and Affirmative Defenses on May 11, 2012. Docket No. 4. On June 3, 2013, Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment. Docket No. 33. That same day, Plaintiff filed a Motion for Leave to File Second Amended Complaint. Docket No. 32.

An order granting Plaintiff's Motion for Leave to File Second Amended Complaint was entered on August 6, 2013, by United States Magistrate Judge Keith Ball. Docket No. 43. On August 6, 2013, through a Text-Only Order, this Court denied Defendant's Motion to Dismiss and its Motion for Summary Judgment without prejudice. Plaintiff filed his Second Amended Complaint on August 9, 2013. In it he refined the allegations set forth in his original Complaint and added state law claims including: breach of implied covenant of good faith and fair dealing, defamation, negligent misrepresentation, fraudulent misrepresentation, and intentional infliction of emotional distress. Docket No. 44. Defendant filed its Answer and Affirmative Defenses to the amended Complaint on August 23, 2013. Docket No. 45.

Collins alleges that he was subjected to harassment and retaliatory practices by employees of the District following the discovery of his participation in a Title IX complaint filed against the District. Docket No. 77. He asserts that on November 12, 2008, he attended a meeting with several parents and school officials including Dr. Lonnie Edwards, the former superintendent of the District. At that meeting, the parents discussed and spoke out against disparities between opportunities offered to male and female student athletes. Also at that meeting, Collins made a power point presentation, which he had prepared, examining the disparities between the athletic facilities for males and females. In addition, during the meeting

he gave to Dr. Edwards a report, which he composed, titled "Unfair Playing Fields: an investigation of Sports-Programs, Facilities, and Funding in the Jackson Public School District of Mississippi." Docket 76-7, at 5.

Subsequent to the meeting, Collins drafted a complaint alleging discrimination against female athletes. The complaint, filed with the United States Department of Education Office of Civil Rights ("OCR"), was signed by James Richardson, a parent of a student enrolled in the District, not Collins. *Id*. Collins was not listed as a complainant either. Docket No. 69-1(Dep. of Charles Collins), at 88-89.

On October 20, 2009, OCR notified Dr. Edwards, that it was conducting a Title IX investigation. Docket No. 76-8, at 2. On February 2, 2010, Collins stepped down as Callaway's head baseball coach, proffering "continued harassment, retaliation, and a general loss of administrative support" as the reasons behind his resignation. Docket No. 76-1, at 5.

On February 19, 2010, Dr. Pamela Self, former assistant principal of Callaway High School, conducted a post observation assessment of Collins as part of his annual performance evaluation. *Id*. at 6. Collins considered the results unfavorable and unjust, so he filed an internal grievance with the District's Human Resource Department ("HR") on March 22, 2010. Docket No. 76-10, at 11-21. On April 20, 2010, a meeting at the District's administrative office was held between HR Director, Carol Dorsey, Deputy Superintendent Wilbur Walters, and Collins to address the complaints in his internal report. Docket No. 76-1, at 7.

At the end of the 2009-2010 school year, Collins was transferred to Capital City Alternative School ("CCAS") by former Callaway High Principal, Clinton Johnson. Docket No. 69-7. He filed a complaint with the OCR on June 10, 2010, alleging the District retaliated against him for his participation in the previously submitted OCR complaint. On December 6,

2010, OCR closed its investigation of Collins's complaint, concluding that there was insufficient evidence to support a claim of retaliation.[3] Collins appealed this decision on February 11, 2011. On January 24, 2012, he received notice from the OCR that his appeal was denied and that he had exhausted all avenues of reconsideration with the United States Department of Education. Docket No. 69-8.

On January 19, 2012, Collins filed an Equal Employment Opportunity ("EEOC") Charge of Discrimination against the District, alleging harassment and retaliation. Docket No. 1-2. Upon his request, on March 16, 2012, the United States Department of Justice ("DOJ") issued to Collins a notice of right to sue. Docket 34, at 28.[4] On April 13, 2012, he received a notice of non-renewal of his employment contract from former District Superintendent Dr. Jayne Sargent, Dr. Edwards's successor. Docket No. 76-13, at 3.[5] Collins filed the instant lawsuit on April 23, 2012. Docket No. 1. On June 17, 2012, he filed another EEOC Charge of Discrimination

---

[3] The December 6, 2010 letter informing Collins of OCR's disposition of his claim is not on record before the Court; however, this decision is referenced in the January 24, 2012 OCR letter which addresses Collins's February 11, 2011 appeal. Docket No. 69-8, at 1 ¶ 3.

[4] The Department of Justice was responsible for issuing the right-to-sue letter because JPSD is a political subdivision. *See* 29 CFR § 1601.28(d)(1).

[5] The letter indicates Collins's contract was being non-renewed for the 2012-2013 school year due to an expiring endorsement mandatory for the position. Docket No. 76-13, at 3. His Mississippi issued educator's license was scheduled to expire on June 30, 2012. *Id*. at 2. The letter further informed Collins that if he renewed his license following receipt of the notice, he could "reapply for a teaching position, if one is available in [his] area of certification." *Id*. at 3. Collins argues that the non-renewal notice effectively terminated him and that this was also an adverse employment action by the District. Docket No. 77, at 23. The District, however, asserts that Collins was not officially discharged by the notice, but rather, merely informed of the nonrenewal of his employment contract due to the impending expiration of his educator's license. Docket No. 69 at 16. Defendant submits state law which it claims supports its option to not enter into a new employment contract with Collins for the approaching year. In pertinent part, Miss. Code Ann. §37-9-105 states:

> "If a recommendation is made by the school district not to offer an employee a renewal contract for a successive year, written notice of the proposed nonreemployment stating the reasons for the proposed nonreemployment shall be given no later than the following: (b) If the employee is a teacher… the superintendent, without further board action, shall give notice of nonreemployment on or before April 15…"

Miss. Code. Ann. §37-9-105 (Rev.2012). In accordance with state law, Collins received a letter dated April 13, 2012, providing him with notice of the decision not to offer him an employee's contract for the successive year. Docket No. 69-9, at 1.

4

alleging charges of retaliation against the District. Docket No. 1-2.

In his Seconded Amended Complaint, although Collins alleges that "[t]his action arises under Title VII of the Civil Rights Act of 1964, as amended," *see* Docket No. 44, at ¶4, he also contends that "[t]his action arises under Title IX of the Education Amendments of 1972 . . . and the implementing regulations promulgated under Title IX." *Id*., at ¶ 5. It is clear to the Court, however, that this case is about alleged harassment and retaliation under Title IX and not Title VII. In the introductory paragraph of his Second Amended Complaint, for example, Collins states "[a]s more specifically set forth below, Plaintiff has been subjected to harassment and retaliation in the terms and conditions of his employment in violation of Title IX of the Education Amendments of 1972. . ." Docket No. 44. *See also id.* at Count I ("Retaliation in violation of Title IX. . ."); Count II ("Retaliation in violation of Title IX. . ."); Count III ("Retaliation in violation of Title IX. . ."); and Count V ("Retaliation in violation of Title IX. . ."). Absent from the Seconded Amended Complaint is any count alleging a violation of Title VII.[6]

## II. LEGAL STANDARD

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v.*

---

[6] It may be that Collins dropped any mention of the EEOC charge because the charge, filed on January 17, 2012, appears to be untimely as he states that the latest act of discrimination was August 5, 2010. A complainant must file his charge of discrimination within 180 days of the alleged discriminatory act. "The 180 day period acts as a statute of limitations." *Ross v. Greenwood Utilities*, No. 4:12-CV-120-SA-JMV, 2014 WL 4197640, *2 (N.D. Miss. Aug. 22, 2014)(citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). "The limitations period begins to run from the from the time the complainant knows or reasonably should have known that the challenged act occurred." *Id*. (citations and quotations omitted).

*Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted). A fact is material if it is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. Fed. R. Civ. P. 56(c)(1). That evidence may include "depositions, . . . affidavits or declarations, . . . or other materials." *Id.* When evaluating a motion for summary judgment, a court refrains from making credibility determinations and does not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. Dep't of Army,* 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

## III. DISCUSSION

To prevail on his Title IX claim, Collins must prove that the District retaliated against him because he complained of sex discrimination in violation of Title IX. *Jackson v. Birmingham Bd. Of Edu.*, 544 U.S. 167, 184 (2005). To establish a prima facie case of retaliation, the plaintiff must demonstrate: (1) that he participated in a statutorily protected activity; (2) he was subjected to an adverse employment action; and (3) a causal connection or link between the protected activity and the adverse action. *Alack v. Beau Rivage Resorts, Inc*. 286 F. Supp. 2d 771, 773 (S.D. Miss. 2003); *McQueen v. City of Columbus*, 2007 WL 624362 (N.D. Miss. Feb. 23, 2007). "[T]he anti-retaliation provision of title IX is similar to those of title VII . . . and should be accorded a similar interpretation." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 252 n. 18 (5th Cir. 1997). *See also Pemberton v. West Feliciana Parish School Bd.*, No. 09-30, 2012 WL 443860, *6 (M.D. La. Feb. 10, 2012) ("Retaliation claims under Title IX are analyzed using the same burden-shifting framework applicable to Title VII retaliation claims."); *Cummings v. Texas Southern University*, No. H-10-1096, 2011 WL 1750697, *3 (S.D. Tex. May 6, 2011) ("Courts generally look to Title VII as the appropriate analog for the legal

standards in Title IX claims."); and *Baggett v. Burnet Consol. School Dist.*, No. A-06-CA-572LY, 2007 WL 2823277, *10 (W.D. Tex. Sept. 25, 2007) (same).

A.      **Participation in a Statutorily Protected Activity**

In its Rebuttal in Support of Defendant's Motion for Summary Judgment, the District asserts that, based on the confines of *Jackson*, Collins does not qualify as a proper Title IX plaintiff because he did not engage in protected activity. Docket No.80, at 3. Defendant argues that Collins did not himself protest Title IX sex discrimination, but only drafted a complaint which he neither signed nor was a named complainant, and that this action alone does not cloak him with statutory protection. The District offers case authority from the Eighth Circuit in support of this contention, declaring that "opposing unlawful discrimination is statutorily protected," however, "status as an *unknowing subject* of someone else's grievance is not." *Clark v. Johanns*, 460 F.3d 1064, 1067 (8th Cir. 2006) (emphasis added). The District's reading of *Jackson* and its application to this case is misplaced because Collins did engage in protected activity.

Collins was not a *subject* of the complaint filed by James Richardson, unknowing or otherwise. As previously discussed though, he was the drafter of the initial Title IX grievance. In fact, Collins was more than the drafter. He was also the conductor. He produced and conducted a power point presentation before Dr. Edwards during the meeting with the concerned parents. That power point presentation exhibited the gender disparities between athletic facilities in the school district. Docket No. 77, at 3. At that meeting, he also gave Dr. Edwards the report which he prepared, titled "UNFAIR PLAYING FIELDS: an investigation of Sports – Programs,

Facilities, and Funding in the Jackson Public School District of Jackson Mississippi."[7] His participation in these ways creates a reasonable inference that his journalistic contribution was indeed an act of "speak[ing] out." *Jackson*, 544 U.S. at 179. He was personally engaged in the meeting -- in the speaking out. Hence, Collins is a victim of discriminatory retaliation if retribution occurred due to his speaking out, "regardless of whether he was the subject of the original complaint." *Id*.

Furthermore, the Fifth Circuit has held that claims of retaliation arising from a Title IX complaint need not be brought by the formally named complainant for relief to be granted. *See Lowrey*, 117 F. 3d at 244 n.1 and 250-51 (finding that retaliation for participating in Title IX complaints and investigations along with *having made internal reports* to the athletic department about sexually discriminating practices qualified the plaintiff for Title IX protection) (emphasis added). Again, Collins alleges he was retaliated against because he complained about the systemic inequalities faced by female athletes in the school district. He drafted a formal complaint addressing these concerns and that complaint was filed by a student-parent. Therefore, he qualifies as a member of the special class for whose benefit the regulation was enacted.[8]

**B.     Claims of Adverse Employment Action**

Collins alleges that he was retaliated against in a number of ways, but they generally fall into three categories: (1) he received negative or poor evaluations; (2) the District mishandled his grievance; and (3) he was transferred to the alternative school. The things about which Collins cries foul do not amount to adverse employment actions, the District contends, because

---

[7] Collins surmises that the planned renovation of the Callaway baseball field was consequently converted to a joint baseball/softball field, in response to the issues he raised as an attempt to ensure compliance with Title IX mandates. Docket No. 76-7, at 2-3.

[8] The regulation does not impose a standing requirement on complainants. "*Any person* who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this part *may by himself or by a representative file*… a written complaint." 34 C.F.R. § 100.7(b) (emphasis added).

"adverse employment actions only include 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" Memo. in Supp. of Defendant's Mot. for Summary Judgment, Docket No. 69, at 7 (quoting *Harper v. City of Jackson Mun. School Dist.*, 414 F.Supp.2d 595, 602 (S.D. Miss.), *aff'd* 149 Fed.Appx. 295 (5th Cir. 2005)). For this proposition, the District also cites *Davis v. Miss. Transp. Com'n*, 618 F.Supp.2d 559, 562 (S.D. Miss. 2009) and *Watkins v. Paulsen*, 332 Fed.Appx. 958, 960 (5th Cir. 2009).

Adverse actions, however, are not so limited. Actions "may constitute 'adverse employment actions,' if they 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Davis v. Dallas Ind. School Dist.*, 448 Fed.Appx. 485, 494 (5th Cir. 2011) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed2d 345 (2006)).

Collins contends that negative evaluations he received from his supervisor, Dr. Pamela Self, constituted adverse employment actions. While the District asserts that "poor performance evaluations do not constitute ultimate employment decisions," *see*, Docket No. 69, at 7, that general proposition is not so firm. *See Davis*, 448 Fed.Appx. at 494 (noting that downgrade in performance evaluation may constitute retaliation); *Klebe v. Univ. of Texas Health Science Cntr. at San Antonio*, 450 Fed.Appx. 394, 396 (5th Cir. 2011) (negative evaluations along with other actions provide adequate evidence for a reasonable jury to conclude that the filing of the discrimination charges and the lawsuit had a causal connection). Indeed, "[c]ontext matters . . . as the significance of any given act of retaliation will often depend upon the particular circumstances." *Davis v. River Region Health Sys.*, 903 F.Supp. 2d 424, 430 (S.D. Miss. 2012) (citing *Burlington*, 528 U.S. at 69).

There is no need, however, to flesh out this point as Collins "states that Dr. Self was not

aware that [Collins] participated in a Title IX complaint." Defendant's Rebuttal in Supp. of Defendant's Mot. for Summary Judgment, Docket No. 80, at 5 (citing Deposition of Charles Collins, Docket No. 80-5, at 96). Without that evidence there is no causal connection. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (holding that defendant could not have retaliated against plaintiff because defendant did not know plaintiff had engaged in protected activity (citing *Long Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). *See also Smith v. Tower Automotive Operations USA I, LLC*, 2013 WL 6240247, at *7 (S.D. Miss. Dec. 3, 2013). Therefore, the District is entitled to summary judgment on Collins's claim that the negative or poor evaluations prepared by Dr. Self were acts of retaliation.

The second act of retaliation about which Collins seeks redress is a grievance filed by him with the District which he claims was mishandled. On March 22, 2010, following the receipt of an annual performance evaluation from Dr. Pamela Self which he perceived as unfavorable, Collins filed an internal grievance with the District's Human Resource Department ('HR"), addressing his concerns of alleged ongoing harassment. Docket No. 76-10, at 11-21. Multiple correspondence between Collins and the HR Director, Carol Dorsey, followed, whereby he inquired about the status of his grievance and she informed him of the proper steps he should follow to effectively obtain a resolution. Docket No. 76-10, at 2-4. The HR Director, along with Deputy Superintendent Wilbur Walters, also later met with Collins on April 20, 2010, to address the concerns in his internal report. Docket No. 76-1, at 7. Ultimately, Collins's internal grievance was never completely processed. In an October 18, 2010, letter summarizing her role in the process, Dorsey explained that she "tried very diligently to address Mr. Collins concerns" but "Mr. Collins told [her] he would not meet with [Mr. Johnson] to discuss the issue and he would be seeking legal advice," so "[a]t this point the complaint procedure became a moot

point." Docket No. 76-10, at 1.

The District contends that the "'denial of an internal grievance procedure does not constitute an adverse employment action.'" Docket No. 80, at 6 [Rebuttal], *quoting Lynch v. Baylor Univ. Med. Ctr.*, 2006 WL 2456493, *9 n. 8 (N.D. Tex. Aug. 23, 2006). The court in *Lynch* also acknowledged that this particular issue had not been squarely addressed by the Fifth Circuit - - a point which the District conveniently omits from the quoted language. As noted by a district court in Texas in a more recent decision, post-*Lynch* and post-*Burlington Northern*, refusal to permit an employee to participate in the grievance process is "likely an adverse action;" at a minimum "it raises a fact issue as to whether [the employee] experienced an adverse employment action." *Badii v. Rick's Cabaret Intern., Inc.*, 2014 WL 550593, *18 (N.D. Tex. Feb. 11, 2014). Again, context matters. But, resolution of this issue too is not necessary because like the alleged retaliatory negative evaluations, there is no evidence in the record that Carol Dorsey, the person Collins accuses of denying him of his grievance, was even aware that Collins participated in a Title IX complaint. *See* Docket No. 69-1, at 23 (Deposition of Charles Collins, Tr. 88: 4-15) (Collins states he does not believe Dorsey was at the November 12, 2008 parent meeting and that they never had any discussions regarding that meeting.); *see also Id.*, at 31 (Tr. 120:1-3) (Collins asserts that no reference of the Title IX complaint was made at the April 2010 meeting with Dorsey and Walters.). There is no evidence of a causal connection. Thus, summary judgment is required on this point. *Luna v. Lockheed Martin Corp.*, 54 Fed.Appx. 404 (5th Cir. 2002); *Cartagena v. Aegis Mortgage Corp.*, 275 F.3d 46, *9 (5th Cir. 2001).

Thirdly, Collins alleges that his transfer to the Capitol City Alternative School was retaliatory because it was in violation of his employment contract and that it was designed to force him to terminate his employment. The District, however, maintains that this transfer was

11


...

nonretaliatory and, while it may have been unwelcome by the plaintiff, it was authorized by Collins's employment contract. Accordingly, the District argues that this transfer does not constitute an adverse employment action.

The District offers several reasons why the transfer could not be deemed an adverse action. Defendant notes, for example, that Collins's contract with the District allows him to be reassigned during the school term to any area in which he holds a valid license; that he experienced no decrease in pay or responsibility; and that he was not going to follow the directives of his principal. *See* Docket No. 69, at 12-13 and Docket No. 80, at 7-8. That the transfer could not be an adverse action is fortified, the District contends, by a case within this district, *Harper v. Jackson Municipal School District*, 149 Fed.Appx. 295 (5th Cir. 2005). In *Harper*, the court determined that the District's transfer of a teacher from a high school to a middle school was not an adverse employment action, in part, because the plaintiff provided no evidence that her transfer to the middle school was either punitive or demotive. *Id*. at 303. The District, however, reads *Harper* too expansively. The mere fact that a transfer may be authorized by an employment contract does not shield such a transfer from being an adverse action.

In a case decided recently by the Fifth Circuit, the court explained as follows:

> [O]ur court has held that a transfer or reassignment can be the equivalent of a demotion, and thus constitute an adverse employment action. *See Alvarado* [*v. Texas Rangers*], 492 F.3d [605], 612-15 [(5th Cir. 2007)]. '[T]o be the equivalent to a demotion, a transfer need not result in a decrease in pay, title or grade, it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement.' *Id*. at 613 (*quoting Sharp v. City of Hous*., 164 F.3d 923, 933 (5th Cir.1999)); *Peagram* [*v. Honeywell, Inc*.,], 361 F.3d [272], 283 [(5th Cir. 2004)]('[A]n employment transfer may qualify as an adverse employment action if the change makes the job objectively worse.') (internal quotation marks omitted); *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 770 (5th Cir. 2001) ('A job transfer that includes a shift change that involves changes in duties or compensation or can be objectively characterized as a demotion may be an 'adverse employment action' . . .); *see, e.g.*, *Sharp*, 164 F.3d 933 ('The jury could have viewed

12

>   transferring from the elite Mounted Patrol to a teaching post at the Police Academy to be, objectively, a demotion."); *Forsyth v. City of Dall.*, 91 F.3d 769, 774 (5th Cir. 1996) (recognizing as demotions the reassignment of two police officers from the Intelligence Unit to night patrol because the Intelligence Unit positions 'were more prestigious, had better working hours, and were more interesting than night patrol' and 'few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment')

*Thompson v. City of Waco, Texas*, --- F.3d.---, 2014 WL 4364153, *2 (5th Cir. Sept. 3, 2014). Simply stated, transfer to a new position can be a demotion where the new position proves objectively worse regardless of whether the transfer resulted in a decrease in pay, title or grade because some changes may be so substantial that they alter the terms, conditions or privileges of employment. *Id*. at *3.

What is absent from this case is *evidence* that the conditions at the Capitol City Alternative School were objectively worse. Collins describes rather powerfully in his brief how he viewed the alternative school as objectively worse than Callaway High School:

>   CCAS serves as a learning alternative for students with difficulty adjusting to the regular classroom setting, who [have] discipline problems in school, and/or who were expelled from school for ten days or more. CCAS is a school that does not offer any Extracurricular or Coaching opportunities. The school environment at Callaway was just like every other high[school] where student[s] [are] free to move about in the hallway as they change classes…CCAS does not allow students to move around freely. Teachers provided constant supervision – more like a detention center. There were security guards posted at every end of the hallways… The environment was unsafe and very risky. Teachers were provided several days of training on how to restrain or control students… The student population consists of a variety of students involved in murder, rape, assault, armed robbery, fights, drug possession, and several other delinquent behaviors… Collins also witnessed several students being handcuffed to poles in the gym…

Docket No. 77, at 21-22.

And, the Court is inclined to believe that there is a distinct difference between CCAS and the other schools within the District which make them fundamentally dissimilar; thus, Collins's reassignment conceivably could be "objectively worse", unlike the transfer between a high

13

school and middle school involved in *Harper*. 149 Fed. Appx. at 298.  But, Collins's bare representations in his brief are not admissible evidence. *Roberts v. Walthall Co. Gen. Hospital*, 96 F.Supp.2d 559,561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000) ("To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or argument and assertions in briefs or legal memoranda."). *See also Brown v. City of Greenwood*, 1998 WL 433927, at *12 (N.D. Miss. June 29, 1998).  He fails to adduce any probative *evidence* to support the allegation that his transfer was punitive, and he has not refuted the legitimate explanations[9] for the transfer offered by the District.  *Liberty Lobby, Inc.*, 477 U.S. at 248.  *See also Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 180 ("[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.").  Consequently, summary judgment on this ground is appropriate as well.  Thus, his federal claims of retaliation must be dismissed.[10]

---

[9] Defendant notes, for example, that Collins's contract authorizes his reassignment during the school term to any area in which he holds a valid licensed. Docket No. 80, at 7-8. The District also offers testimony that Collins expressed he would no longer follow the directives of Principal Johnson. *See* Docket No. 69-7 (JPS Letter to Atty. Gentry), at 2 ¶ 1; Docket No. 69-1 (Tr. 121., at 8-12).  It is argued by the District that Collins's insubordination prompted the principal to seek to have him relocated through an administrative transfer. Docket No. 69, at 13.  In a correspondence between OCR attorney, Tonya Gentry, and a legal representative for the District, an administrative transfer was defined as the type of transfer that occurs "when there is a problem, a need for a teacher at another campus, etc." Docket No. 76-11, at 7 ("This is when the administrators look at the current vacancies at the same level [e.g., middle school teachers will still teach middle school grade levels, same with high school] and makes the transfer. Two levels of approval are not needed for this type of transfer.").  In a separate correspondence between District counsel and  Gentry, a representative for the District explained that the "Administrative Asst. Superintendent has the authority to administratively transfer an employee if there are problems, if someone is needed at a different school, etc.," and that the "decision to place Mr. Collins at another site had to do with his blatant unwillingness to respond to the Principal." *Id.*, at 8.  It is reasoned further that the transferal to CCAS was dictated by the fact that Collins had to be moved to a position in which he was certified and, at the time, the alternative school had an opening for a Math teacher. *Id.*
[10] In his memorandum in response to the District's motion for summary, Collins asserts as alleged in Count V of his Second Amended Complaint, that he was finally terminated from the district in retaliation

C.   **State Law Claims**

Collins has also alleged the state law claims of breach of the implied covenant of good faith and fair dealing, defamation, negligent misrepresentation, fraudulent misrepresentation, and intentional infliction of emotional distress.  Title 28, Section 1367, of the United States Code confers this Court with discretion to exercise supplemental jurisdiction over these remaining state law claims. 28 U.S.C. § 1367(c)(3).  Because there are not any pending federal law claims, the Court declines to exercise supplemental jurisdiction over the state law claims which now have no jurisdictional fortitude.  *See, e.g.*, *Bass v. Parkwood Hosp.*, 180 F.3d 237, 246 (5th Cir. 1999) (explaining that the district court still "must exercise its discretion whether to exercise supplemental jurisdiction over [the remaining] state law claims" even though federal claims were dismissed); *Certain Underwriters at Lloyd's, London v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006) (explaining that "it is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or eliminated from a case.") (citation omitted).  Accordingly, Plaintiff's state law claims are dismissed without prejudice.

---

in violation of Title IX.  *See* Docket No. 77, at 23.  With respect to this issue he literally offers one sentence.  The District's reason for Collins's termination is set forth at note 5, *supra*.  Being faced with this legitimate, non-retaliatory reason for its actions, it was then Collins's burden to show that the given reason is only pretext and that his termination would not have occurred but for the District's retaliatory motive.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, __U.S. __, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013).  Other than the fleeting assertion in his brief, Collins offers nothing else.  Without evidence, his assertion is nothing more than *ipse dixit*.  And summary judgment on that claim too must be granted.  *See King v. Board of Trustee of State Institutions of Higher Learning of Mississippi*, Civil Action No. 3:11-CV-403, 2014 WL 1276477, *12 (S.D. Miss. March 27, 2014) ("'Absent any supporting evidence, the plaintiff's unsupported *ipse dixit* does not create a triable issue of fact.'") (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be GRANTED. The federal claims are dismissed with prejudice and the state law claims are dismissed without prejudice. A final judgment consistent with is memorandum opinion and order will be entered on this day.

**SO ORDERED**, this the 30th day of September, 2014.

<div style="text-align: right;">
s/Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE
</div>